**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-Appellant
Cross Appellee,**

v.

**The HERNANDO BANK, INC., Defend-
ant-Appellee Cross Appellant.**

No. 82–4298.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1984.

Marcia B. Ruskin, Atty., Susan B. Reilly, E.E.O.C., Washington, D.C., for plaintiff-appellant cross-appellee.

M. Curtiss McKee, Frank M. Holbrook, Jackson, Miss., for defendant-appellee cross-appellant.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) brought suit against The Hernando Bank, Inc. under the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17, alleging that the Bank had discriminated against several of its female employees on the basis of sex. Specifically, the EEOC claimed that the Bank paid female assistant cashiers less than it paid male assistant cashiers for the performance of substantially similar work. The EEOC brought its Equal Pay Act claims under sections 16(c) and 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 216(c), 217.

The Bank moved for summary judgment on the basis, *inter alia,* of identical affidavits executed by the three female employees named in the EEOC's initial complaint. The affidavits stated, in pertinent part: "I am not aware of any sex discrimination at Hernando Bank, therefore, I did not request, do not desire, nor have I authorized the Equal Employment Opportunity Commission to represent me in the foregoing civil action."

Relying heavily upon the affidavits, the district court entered a summary judgment dismissing all of the EEOC's claims. The

court denied the Bank's request for attorneys' fees.

The EEOC appeals the summary judgment only as it applies to the three female assistant cashiers named in its original Equal Pay Act complaint. It does not appeal the Title VII summary judgment. The Bank cross-appeals, claiming that (1) the EEOC had no power to enforce the substantive provisions of the Equal Pay Act, (2) the district court lacked subject matter jurisdiction, and (3) the district court abused its discretion in denying the Bank's request for attorneys' fees.

This appeal presents several serious questions of far reaching consequences. Concluding that the summary judgment was improvidently granted, we reverse and remand for further proceedings.

### Authority of EEOC

A threshold consideration, anticipated in Hernando Bank's brief, is precipitated by the intervening decision of the Supreme Court in *INS v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In *Chadha,* the Supreme Court held that the one-house congressional veto provision in § 244(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2), was unconstitutional because it violated the doctrine of separation of powers.

Hernando Bank alleges that *Chadha* requires us to hold that the EEOC had no authority to enforce the substantive provisions of the Equal Pay Act. Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807, 92 Stat. 3781, *reprinted in* [1978] U.S.Code Cong. & Admin.News 9795–9800, which was promulgated under the authority delegated to the President by the Reorganization Act of 1977, 5 U.S.C. §§ 901–12, transferred the federal government's authority to enforce the Equal Pay Act from the Secretary of Labor to the EEOC. Hernando Bank argues that the Reorganization Act and all

reorganization plans promulgated thereunder must be found invalid because the Reorganization Act contains a legislative veto provision similar to the one struck down in *Chadha, see* 5 U.S.C. § 906.[1] We do not agree.

■ After a close analysis of the language and legislative history of the Reorganization Act, we conclude that its unconstitutional one-house legislative veto provision is severable. We further conclude that the remainder of the Reorganization Act is constitutional and that President Carter's Reorganization Plan No. 1 of 1978 effected a valid transfer of Equal Pay Act enforcement authority from the Secretary of Labor to the EEOC.

■ The Reorganization Act of 1977 does not contain a severability clause. Although we might infer from such legislative silence that Congress intended the provisions of the statute to be nonseverable, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968). Rather, the court must inquire into whether Congress would have enacted the remainder of the statute in the absence of the invalid provision. *Consumer Energy Council v. FERC,* 673 F.2d 425 (D.C. Cir.1982). "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley v. Valeo,* 424 U.S. 1, 109, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976), *quoting Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932).

Congressional intent and purpose are best determined by an analysis of the language of the statute in question. What reasons did Congress assign for its enactment of the Reorganization Act? Congress formally de-

---

1. Subject to certain limitations, the Reorganization Act of 1977 authorizes the President to reorganize the executive branch of the federal government by submitting plans of reorganization to both Houses of Congress. Under 5 U.S.C. § 906, a plan becomes effective if neither House objects to it within sixty days of its submission. This one-house legislative veto provision is unconstitutional under *Chadha.*

clared the Act's policy and purpose in 5 U.S.C. § 901(a):

> The Congress declares that it is the policy of the United States—
>
> (1) to promote the better execution of the laws, the more effective management of the executive branch and of its agencies and functions, and the expeditious administration of the public business;
>
> (2) to reduce expenditures and promote economy to the fullest extent consistent with the efficient operation of the Government;
>
> (3) to increase the efficiency of the operations of the Government to the fullest extent practicable;
>
> (4) to group, coordinate, and consolidate agencies and functions of the Government, as nearly as may be, according to major purposes;
>
> (5) to reduce the number of agencies by consolidating those having similar functions under a single head, and to abolish such agencies or functions thereof as may not be necessary for the efficient conduct of the Government; and
>
> (6) to eliminate overlapping and duplication of effort.

In 5 U.S.C. § 901(b), Congress explained that the policies of § 901(a) could best be accomplished by delegating to the President the legislative authority to reorganize the executive branch. The words of Congress are explicit:

> Congress declares that the public interest demands the carrying out of the purposes of subsection (a) of this section and that the purposes may be accomplished in great measure by proceeding under this chapter, and can be accomplished more speedily thereby than by the enactment of specific legislation.

Thus Congress obviously concluded that it would be more efficient and better attuned to the public interest to delegate to the President authority to formulate the specifics of reorganization plans.

The legislative veto provision reflects Congress' desire to vote its approval of any specific reorganization plan. But there is more of relevance to our inquiry in the language of the Act. The Reorganization Act of 1977 is the first such statute in which Congress placed specific limitations upon the authority delegated. Section 905 provides that no plan may create a new executive department, abolish or transfer an executive department or independent regulatory agency, continue an agency or function beyond the time authorized by law, or authorize an agency to exercise a function not already expressly conferred by law. *See* H.R.Rep. 95–105, *reprinted in* [1977] U.S.Code Cong. & Admin.News 41.

A review of the Reorganization Act's legislative history demonstrates congressional awareness of the serious constitutional questions raised by the legislative veto. Congressman Robert Drinan doubted the wisdom of bypassing the normal legislative process and, thereby, of risking a judicial declaration of unconstitutionality. He observed that the Reorganization Act "intentionally does not contain a severability clause. The one House veto provision is deemed to be an integral and necessary part of the legislative scheme for reorganization." *Id.* at 69.

With the exception of Congressman Drinan's comments, nothing in the wording of the Act or in its legislative history indicates that Congress would not have enacted the Reorganization Act without the legislative veto provision or that Congress even considered the issue of severability.

The legislative history is replete with statements calling for efficient change in the organization of the executive branch. The House Report notes that in our constantly shifting society, "[f]unctions change, new methods are developed, bureaucratic structures become obsolete, [and] new laws are passed." *Id.* at 43–44. Congress expected the Reorganization Act to bring about organizational changes in the executive branch that would result in "cost reduction, improved management and better services to the public." *Id.* at 43.

It is clear from the legislative history that Congress undertook several steps in its drafting of the Act to "strengthen the role

of Congress and help allay, in part, fears of unconstitutionality." *Id.* The substantive limitations imposed retain for Congress control over the substantive operations of the federal government. The Act does nothing more than delegate to the President the authority to reorganize the complex bureaucratic machinery of the executive branch so as to implement most effectively Congress' substantive policies.[2]

Congress was acutely aware of the ongoing need for flexibility in the reorganization of the executive branch, and it adopted what it perceived to be the most efficient, expeditious means of achieving that end. In so doing, it retained, as the Constitution requires, the ultimate power to establish by legislation the substantive policies of the federal government.

We conclude that the unconstitutional legislative veto provision is severable even though the Reorganization Act of 1977 contains no severability clause, because neither the express language of the statute nor the Act's legislative history makes it "evident that the legislature would not have enacted" the remainder of the Act in the absence of the legislative veto provision. *See Buckley v. Valeo,* 424 U.S. 1, 109, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). Mere uncertainty about the legislature's intent is insufficient to satisfy the test announced in *Buckley v. Valeo.* We therefore hold that the remainder of the Act "is fully operative as a law." *Id.*

We further find and hold that the Reorganization Act validly delegated to the President the legislative authority to promulgate executive branch reorganization plans. Because President Carter's Reorganization Plan No. 1 of 1978 conformed to the substantive provision of the Act and did not transgress any of the limitations imposed by 5 U.S.C. § 905, the plan is enforceable as law. The plan thus effected a valid transfer of governmental authority to enforce the Equal Pay Act from the Secretary of Labor to the EEOC.

*Jurisdiction*

Hernando Bank alleges that the district court lacked subject matter jurisdiction. We do not agree. The EEOC brought this action pursuant to sections 16(c) and 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 216(c), 217. Section 17 provides that "[t]he district court . . . shall have jurisdiction . . . to restrain violations of section 15. . . . "

In addition, the district court had jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1345. Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the constitution, laws or treaties of the United States." A suit brought under the Equal Pay Act is obviously an action arising under a law of the United States. Section 1345 grants the district courts original jurisdiction of civil actions brought by federal agencies, such as the EEOC, that are ex-

---

**2.** We perceive a significant distinction between the exercise of a one-house legislative veto, such as that held invalid in *Chadha,* and the mere presence of an unexercised legislative veto in the Reorganization Act. *Chadha* involved a situation in which Congress delegated to the Attorney General "the authority to allow deportable aliens to remain in this country in certain specified circumstances." 103 S.Ct. at 2786. By its unilateral veto of the Attorney General's decision to allow Mr. Chadha to remain in the United States despite an outstanding deportation order, the House of Representatives "took action that had the purpose and effect of altering the legal rights, duties and relations of persons, including the Attorney General, Executive Branch officials and Chadha, all outside the legislative branch." 103

S.Ct. at 2784. The Supreme Court held that once Congress delegated its legislative authority, it was obliged to honor its delegation "until that delegation is legislatively altered or revoked." 103 S.Ct. at 2786.

In the instant case, there was no congressional delegation and subsequent withdrawal of delegated legislative powers. Further, no action was taken that affected the substantive rights of any person. The challenged executive action did nothing more than transfer the federal government's responsibility for enforcing the Equal Pay Act from one executive agency to another, *i.e.* from the Secretary of Labor to the EEOC. The reorganization plan effected no substantive change in the applicable substantive legislation; indeed, 5 U.S.C. § 905 forbids any such changes.

pressly authorized to sue by an Act of Congress.[3]

## Statute of Limitations

■ The district court held that the statute of limitations[4] bars the EEOC's claims under 29 U.S.C. § 216(c)[5] because, even though employees Harris, Fuquay, and Sullivan were listed in the prayer for relief section of the EEOC's initial complaint, the EEOC did not specifically name the three as plaintiffs before the expiration of the two-year limitation period.[6] However, courts that have considered the "named as party plaintiff" requirement of 29 U.S.C. § 256, a statute very similar to § 216(c), have required merely that the employee be identified in the complaint or in a pleading equivalent to it. *E.g. Donovan v. Crisostomo,* 689 F.2d 869 (9th Cir.1982) (Wisdom, J., sitting by designation), *citing Prickett v. Consolidated Liquidating Corp.,* 196 F.2d 67 (9th Cir.1952); *Ciemnoczolowski v. Q.O. Ordinance Corp.,* 119 F.Supp. 793 (D.Neb. 1954), *affirmed,* 233 F.2d 902 (8th Cir.), *cert. denied,* 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956). The EEOC's naming of the three women in the prayer of its complaint satisfies this test, as does the agency's specific references to them in its answers to Hernando Bank's interrogatories. Therefore, the statute of limitations does not bar the EEOC's claims under § 216(c).

## Conciliation as a Precondition to Litigation

■ The district court stated in support of its grant of summary judgment that the EEOC's conciliation efforts prior to commencement of this litigation were grossly inadequate. The trial court thus implicitly held that the EEOC must undertake conciliation efforts before it may commence a judicial proceeding to enforce the Equal Pay Act. Although it is undisputed that the EEOC must "endeavor to eliminate any . . . alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion" before it may bring a judicial enforcement proceeding under Title VII, *see* 42 U.S.C. 2000e–5(b), the question whether the EEOC must do the same before it may commence such an action under the Equal Pay Act is one of first impression in this circuit. We now hold that the EEOC is not required to conciliate as a precondition to the filing of a suit to enforce the

---

**3.** 28 U.S.C. § 1345 provides in full:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Hernando Bank argues that the EEOC may not invoke § 1345 jurisdiction because the Equal Pay Act authorizes the Secretary of Labor and not the EEOC to bring enforcement proceedings. The EEOC assumed its enforcement powers from the President's Reorganization Plan No. 1 of 1978 rather than from an Act of Congress. However, since a presidential reorganization plan that is not rejected becomes law, *Young v. United States,* 212 F.2d 236 (D.C. Cir.1954), *cert. denied,* 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137 (1954), and since the application of the Reorganization Plan No. 1 of 1978 to pending litigation "contradicts neither 'statutory direction [n]or legislative history,'" *United States v. City of Miami,* 664 F.2d 435, 437 (5th Cir.1981) (en banc), *quoting Bradley v. School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), we hold that the EEOC was "expressly authorized to sue" under the Equal Pay Act within the meaning of § 1345.

**4.** 29 U.S.C. § 255 provides, in pertinent part:

> Any action commenced . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended . . .
>
> (a) . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued . . .

**5.** The EEOC sought remedies under 29 U.S.C. §§ 216(c) and 217. Hernando Bank concedes that the EEOC's § 217 claims were commenced in a timely fashion.

**6.** 29 U.S.C. § 216(c) provides, in pertinent part:

> In determining when an action is commenced . . . under this subsection for the purposes of the statutes of limitations provided in [29 U.S.C. § 255], it shall be considered to be commenced in the case of any individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint, or if his name did not so appear, on the subsequent date on which his name is added as a party plaintiff in such action.

substantive provisions of the Equal Pay Act. It follows *a fortiori* that inadequate conciliation efforts present no bar to judicial proceedings.

We briefly sketch the relevant statutory history. Congress enacted the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* By providing that "any amounts owing to any employee which have been withheld in violation of this subsection [*i.e.* the Equal Pay Act] shall be deemed to be unpaid minimum wages or unpaid overtime compensation under [the FLSA]," 29 U.S.C. § 206(d)(3), Congress intended that the Equal Pay Act be enforced in accordance with well established FLSA procedures. H.Rep. No. 309, 88th Cong., 1st Sess., *reprinted in* [1963] U.S.Code Cong. & Admin.News 687. These procedures do not include conciliation. *See* 29 U.S.C. §§ 206(d), 216, 217. When Congress amended the Equal Pay Act in 1974, it did not add a conciliation requirement, an administrative procedure that it had ordained in the intervening years when it first adopted and then expanded Title VII. *Compare* 29 U.S.C. §§ 204(f), 216(b) *with* 42 U.S.C. §§ 2000e–5(b), 2000e–16(c).

The Reorganization Act of 1977 and Reorganization Plan No. 1 of 1978 are at the end of the scenario. We find nothing in the language of the Reorganization Act, the Reorganization Plan, the message of President Carter accompanying the plan, or in the Executive Order implementing it that supports the proposition that the conciliation requirements of Title VII automatically apply to Equal Pay Act claims after the transfer. *See* the Reorganization Act and Reorganization Plan; Executive Order No. 12,144, *reprinted in* 44 Fed.Reg. 37,193 (1979). *See also* S.Rep. No. 750, 95th Cong., 2d Sess. (1978); H.R.Rep. No. 1069, 95th Cong., 2d Sess. (1978).

Our holding today is based upon several considerations. We first note the absence of any reference to a conciliation requirement in the statutory language of the Equal Pay Act. Nothing in the legislative history suggests that this omission was due to congressional oversight or inadvertence. We are persuaded that had Congress wished to require conciliation as a prerequisite to litigation, it would have done so expressly, as it did for actions brought under both Title VII, 42 U.S.C. § 2000e–5(b), and the Age Discrimination in Employment Act, 29 U.S.C. § 626(b).

Further, a conciliation requirement would be inconsistent with the remedial scheme of the Equal Pay Act. The FLSA provides for the payment of unpaid wages, but limits an award to the two-year period (and in some instances three-year period) immediately preceding the filing of the lawsuit. 29 U.S.C. § 255(a). Under Title VII, back pay is available for the two-year period immediately prior to the commencement of administrative proceedings with the EEOC. 42 U.S.C. § 2000e–5(g). Accordingly, the conciliation requirement of Title VII has no practical adverse effect upon that statute's remedial scheme, but the delay caused by such a requirement under the Equal Pay Act would seriously diminish, or destroy, the back pay claim it would purport to prescribe.

In addition, the legislative history reveals that the Congress considered but declined to adopt a permissive conciliation provision in the Equal Pay Act.[7] Finally, we find instructive the passing observation by the Supreme Court in *County of Washington v. Gunther,* 452 U.S. 161, 175 n. 14, 101 S.Ct. 2242, 2251 n. 14, 68 L.Ed.2d 751 (1981), that "the Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts."

Our holding today is consistent with the decisions recently reached by our colleagues in the District of Columbia Circuit, *Ososky v. Wick,* 704 F.2d 1264 (D.C.Cir.1983), and in

---

7. The rejected provision stated in part, "If a violation is found to exist, the Secretary may, before taking further action hereunder, by informal methods of conference, conciliation, and persuasion, endeavor to eliminate ..." S.Rep. 910, 88th Cong., 1st Sess., 109 Cong.Rec. 2886, 2887 (1963).

the Eighth Circuit, *EEOC v. Home of Economy, Inc.*, 712 F.2d 356 (8th Cir.1983).

### Affidavits of Discriminatees

In granting Hernando Bank's motion for summary judgment, the district court was obviously impressed by the affidavits of the three female assistant cashiers named in the EEOC's complaint. The affidavits, which were attached to Hernando Bank's motion, stated: "I am not aware of any sex discrimination at Hernando Bank, therefore, I did not request, do not desire nor have I authorized the Equal Employment Opportunity Commission to represent me in the foregoing civil action." The three women also executed supplemental affidavits containing the same statement. The September 2, 1980 affidavit of one of the female assistant cashiers, and her supplemental affidavit dated March 25, 1981, are set out in full in the margin.[8] All three

8. AFFIDAVIT OF IMOGENE HARRIS

STATE OF MISSISSIPPI
COUNTY OF DESOTO

Personally appeared before me the undersigned authority in and for the jurisdiction aforesaid, while within my jurisdiction, Imogene Harris who, after being duly sworn by me, stated to me upon her oath as follows:

1.

My name is Imogene Harris. I am an adult resident citizen of the State of Mississippi, have personal knowledge of the facts stated herein, and, if sworn as a witness, could competently testify thereto.

2.

I am employed by the Hernando Bank. My position with the Hernando Bank is that of Assistant Cashier.

3.

It is my understanding that the Equal Employment Opportunity Commission is presently seeking relief on my behalf in a civil action styled *Equal Employment Opportunity Commission v. Hernando Bank, Inc.*, Civil Action No. DC 80–26–LS–P, on file in the United States District Court for the Northern District of Mississippi, Delta Division. It is my further understanding that said action is founded upon allegations of sex discrimination.

4.

I am not aware of any sex discrimination at Hernando Bank, therefore, I did not request, do not desire nor have I authorized the Equal Employment Opportunity Commission to represent me in the foregoing civil action.

5.

No official officer or other agent of the Hernando Bank has requested or required me to give this affidavit, instead, I initiated the contact with the bank officials regarding the necessary steps to terminate my involvement in this action. I have freely voluntarily and of my own volition given this affidavit without any coercion or promise of reward by any official, officer or agent of the Hernando Bank. I have been assured by officers of the Hernando Bank that no reprisal will be taken in the event I choose to have the Equal Employment Opportunity Commission continue to pursue this action on my behalf, however, I do not desire the Equal Employment Opportunity Commission to continue to maintain this action on my behalf.

6.

I hereby request that the Court terminate this action as it relates to me.

Dated this 2nd day of September, 1980.

/s/ Imogene Harris
IMOGENE HARRIS

Sworn to and subscribed before me this 2nd day of September, 1980.

/s/ Donna B. Harris
NOTARY PUBLIC

My Commission Expires:
My commission expires June 10, 1981

SUPPLEMENTAL AFFIDAVIT OF
IMOGENE HARRIS

STATE OF MISSISSIPPI
COUNTY OF DESOTO

Personally appeared before me the undersigned authority in and for the jurisdiction aforesaid, while within my jurisdiction, Imogene Harris, who, after being duly sworn by me, stated to me upon her oath as follows:

1.

My name is Imogene Harris. I am an adult resident citizen of the State of Mississippi, have personal knowledge of the facts stated herein, and, if sworn as a witness, could competently testify thereto.

2.

I am employed by the Hernando Bank. My position with the Hernando Bank is that of Assistant Cashier.

3.

I am the same Imogene Harris who previously provided an affidavit in this civil action on September 2, 1980. Furthermore, I am the same Imogene Harris who was deposed by the Equal Employment Opportunity Commission on March 24, 1981. This affidavit was provided to the bank after the March 24, 1981 deposition.

4.

It is my understanding that the Equal Employment Opportunity Commission is presently seeking relief on my behalf in a civil action styled *Equal Employment Opportunity Commission v. Hernando Bank, Inc.*, Civil Action No. DC 80–26–LS–O, on file in the United States District Court for the northern District

affidavits are identical, as are all three supplemental affidavits.

 In finding that these affidavits rendered the EEOC "powerless to prosecute a suit" under either section 16(c) or 17 of the FLSA, 29 U.S.C. §§ 216(c), 217, the district court accorded inordinate weight to them. This was error. The affidavits are material, but they are not dispositive of the factual and legal issues involved in the determination of whether Hernando Bank complied with the congressional directives contained in the Equal Pay Act. Like the affidavits, the Equal Pay Act speaks of discrimination, but it does so in terms that may not appear to be discrimination to a layman. The Equal Pay Act obliges an employer to provide equal pay for "equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The operative test is whether a woman is paid less for a job "substantially equal" to a man's; the test relates to job content rather than to job title or description. *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir. 1973). Factored into the court's determination are such diverse considerations as seniority systems, merit systems, quantity or quality productivity schemes, and differentials based on any factor other than sex. 29 U.S.C. § 206(d)(1). The court's inquiry is often complicated and oblique. A proper determination demands far more than the mere conclusional attestation by the alleged discriminatees that they are not aware of any discrimination.

*Summary Judgment*

Under Fed.R.Civ.P. 56, the district court may grant a summary judgment only if "there is no genuine issue as to any material fact." In determining whether there is a genuine fact issue, the court must review "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." We addressed the specifics of summary judgment in *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980), and held:

> The burden of proof falls on the party seeking summary judgment, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. (Citations omitted.) We note that a court can only

---

of Mississippi, Delta Division. It is my further understanding that said action is founded upon allegations of sex discrimination.

5.

I am not aware of any sex discrimination at Hernando Bank, therefore, I did not request, do not desire, nor have I authorized the Equal Employment Opportunity Commission to represent me in the foregoing civil action.

6.

No official, officer, or other agent of the Hernando Bank has requested or required me to give this supplemental affidavit. Instead, I initiated the contact with the bank officials regarding the necessary steps to terminate my involvement in this action. I have freely, voluntarily and of my own volition given this affidavit without any coercion or promise of reward by any official, officer or agent of the Hernando Bank. I have been assured by officers of the Hernando Bank that no reprisal will be taken in the event I choose to have the Equal Employment Opportunity Commission continue to pursue this action on my behalf, however, I do not desire the Equal Employment Opportunity Commission to continue to maintain this action on my behalf.

7.

On March 24, 1981, I discussed this case with the attorneys for the Hernando Bank. My discussions with the bank's attorneys were voluntary. The bank's attorneys explained my involvement in this civil action and I was permitted to ask any questions I wished to ask. I was assured by the attorneys that no reprisal will be taken in the event I choose to have the Equal Employment Opportunity Commission continue to pursue this action on my behalf, however, as I previously stated to the bank's officials, I do not desire the Equal Employment Opportunity Commission to continue to maintain this action on my behalf.

8.

Based on the foregoing facts I hereby reaffirm and renew my request of September 2, 1980, that the Court terminate this action as it relates to me.

Dated this 25 day of March, 1981.

/s/ Imogene Harris
IMOGENE HARRIS

Sworn to and subscribed before me this 25th day of March, 1981.

/s/ Lola H. Robison
NOTARY PUBLIC

My Commission Expires:
My Commission Expires July 23, 1983.

enter a summary judgment if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention—the court must consider both before granting a summary judgment.

After reviewing all of the record now before us, we find that there was a substantial differential in the pay of male and female assistant cashiers throughout the entire relevant time period. No female assistant cashier at Hernando Bank has ever been paid as much as any male assistant cashier. Indeed, one male assistant cashier who received an unfavorable performance rating and was reassigned to a lower position as "courier," continued to receive a higher salary than all of the female assistant cashiers.

The record includes several descriptions of the duties of various assistant cashiers. While some were responsible for the general ledger, vault supervision, and customer assistance, others balanced accounts and supervised other employees. All assistant cashiers, male and female, rotated among the various functions. Whether Hernando Bank paid different amounts to females than it paid to males for substantially equal job assignments is a disputed question of fact on the record before us. Because this disputed issue is material to the EEOC's Equal Pay Act claims, the summary judgment should not have been granted.

It necessarily follows that there is no basis for Hernando Bank's cross-appeal for attorneys' fees.

The judgment of the district court is REVERSED, the grant of summary judgment is vacated and the matter is REMANDED for further proceedings consistent herewith.