## Commonwealth v. Cochran

*Leonard Sosnon,* for defendants.
*Maxine J. Stotland,* for Commonwealth.

TEMIN, *J.,* November 28, 1984—These cases come before the court on identical post-verdict motion filed by defendants. In each case defendants ask this court to find that the sentencing guidelines promulgated by the Sentencing Commission of the Commonwealth of Pennsylvania[1] are unconstitu-

---

1. 42 Pa. C.S. §9721 [204 Pa. Code Ch. 303].

tional under both the Constitutions of the United States and the Commonwealth of Pennsylvania and to disregard them in sentencing defendants.[2]

The Sentencing Commission of the Commonwealth of Pennsylvania was created by the Act of November 26, 1978, P.L. 1316, No. 319, 18 Pa. C.S. §1381, et seq., which was subsequently repealed, amended, and transferred to 42 Pa. C.S. §2151, et seq., by the Act of October 5, 1980, P.L. 693, No. 142 (Act 319-1978).

In addition to other duties, the legislature charged the commission with the task of adopting guidelines to be used by courts in sentencing defendants convicted of felonies and misdemeanors. The legislature mandated that the commission shall:

. . . adopt guidelines for sentencing within the limits established by law . . . . The guidelines shall:

(1) Specify the range of sentences applicable to crimes of a given degree of gravity.

(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.

(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances. 42 Pa. C.S. §2154.

The statute further provided that the initial and any subsequent guidelines adopted by the commis-

2. Argument was originally heard by this court on August 10, 1984 and the court's opinion was issued August 24, 1984. Subsequently defendants' petitions for reargument were granted and heard on October 1, 1984. The opinion issued August 24, 1984 is hereby withdrawn and this opinion substituted in its stead.

sion become effective, "180 days after publication in the Pennsylvania Bulletin . . . unless rejected in their entirety by the General Assembly by a concurrent resolution within ninety days of their publication . . ." 42 Pa. C.S. §2155(c). The initial guidelines promulgated by the commission were published on January 24, 1981 and subsequently rejected by House Resolution No. 24 adopted by the house on April 1, 1981 and the senate on April 8, 1981. The present guidelines were adopted on May 14, 1982 and became effective July 22, 1982.[3]

It is uncontested here that Act 319-1978 which establishes the sentencing commission was properly approved by both houses of the legislature and submitted to the governor for signature in accordance with the bicameral approval and presentment provisions of the Pennsylvania Constitution. Pa. Const. Article II, §1; Article III, §4; Article III, §8; Article III, §9 and Article IV, §15. It is urged however, that the guidelines themselves became law without compliance with these sections; that the legislative veto contained in Sections (b) and (c) of 42 Pa. C.S. §2155 is unconstitutional; that the legislature could not delegate its lawmaking power to the Pennsylvania Commission on Sentencing and that even if it could, the delegation in the instant case is improper as it does not contain adequate standards to guide and restrain the exercise of discretion by the commission; and, finally, that the sentencing guidelines violate the separation of powers doctrine under Article V, Section 10(c) of the Pennsylvania

---

3. The guidelines became effective pursuant to 42 Pa. C.S. §2155(c) as they were not rejected by a concurrent resolution of the General Assembly. The senate actually approved the guidelines in Senate Resolution No. 227 passed on April 20, 1982. The effect of this is discussed, infra, footnote 9.

Constitution by impermissibly interfering with the power of the judiciary to impose sentence.

For the reasons set forth below, this court holds that: the power to prescribe sentences for crimes is vested in the legislature; the sentencing commission was properly established and its authority to prescribe guidelines to be considered by judges in sentencing was lawfully delegated; the history of constitutional enactment in Pennsylvania suggests strongly that recent decisions of the Supreme Court of the United States striking down the legislative veto as unconstitutional are equally applicable to Pennsylvania law; assuming the legislative veto provision of Act 319-1978 to be unconstitutional it is, nevertheless, severable from the remainder of the act; the veto provision of Act 319-1978 was not exercised in connection with the promulgation of the present guidelines; and, the guidelines, having become effective under the provisions of Act 319-1978, must be considered by this court. The motions are, therefore, denied.

It is well-settled in Pennsylvania that the power to prescribe punishments for crimes is vested in the legislature and that the power of the courts to sentence can only be exercised within the limits prescribed by legislative act. Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 28 A.2d 897 (1942); Commonwealth v. Sutley, 474 Pa. 256, 378 A.2d 780 (1977); Commonwealth v. Glover, 397 Pa. 543, 156 A.2d 114 (1959). Defendants concede that the legislature can, "provide for fixed penalties or grant to the Court such measure of discretion in the imposition of sentences as it [the legislature] may see fit." Commonwealth ex rel. Banks v. Cain, supra. The guidelines, which need only be considered by the court, but do not limit the court's discretion, fall

well within the permitted legislative mandate. 42 Pa. C.S. §2154.

The legislature also has the power to create administrative agencies and commissions and to delegate to such agencies and commissions authority to make rules and implement aspects of those areas of the law which the legislature controls. Bortz Coal Company v. Air Pollution Commission, 2 Pa. Commw. 441, 229 A.2d 388 (1971). "[A] general provision may be made, and power given to those who are to act under such general provision to fill up the details." Wayman v. Southard, 10 Wheat. (23 U.S.) 1, 41, 6 L. Ed. 253 (1825), Marshall, C.J. The legislature may, "establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the Act." Belovsky v. Redevelopment Authority, 347 Pa. 329, 342, 54 A.2d 277, 284 (1947). The legislation delegating such duties to an independent commission must contain adequate standards which will guide or restrain the exercise of the delegated functions. Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587 (1957).

"In deciding whether the legislation does "contain adequate standards," a court must give the legislature the benefit of the doubt. "If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative action is not a forbidden delegation of legislative power." J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409, 48 S. Ct. 348, 352, 72 L. Ed. 624 (1928). "[I]ntelligible principle" has been held to include such standards as "just and reasonable," Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S. Ct. 220, 74 L. Ed. 524 (1930), "public interest," New York Central Securities Corp. v. United States,

287 U.S. 12, 53 S. Ct. 45, 77 L. Ed. 1166 (1933), and "unfair methods of competition," FTC v. Gratz, 253 U.S. 421, 40 S. Ct. 572, 64 L. Ed. 993 (1920). And see Chartiers Valley Jt. Schs. v. Allegheny Co. Bd., . . . Commonwealth v. Kindness, 247 Pa. Super. 99, 124, 125, 371 A.2d 1346, 1359 (1977), Spaeth, J., dissenting.

In delegating to the sentencing commission the authority to formulate sentencing guidelines pursuant to Act 319-1978, the legislature directed the commission to work within the maximum sentences already established by law, to specify an equal range of sentences for crimes of the same degree of gravity,[4] to specify a range of sentences of increased severity for cases where defendants had either been previously convicted of a felony or felonies or had been convicted of a crime involving use of a deadly weapon and to specify variations from

---

4. References to the "limits established by law" and "crimes of the same degree of gravity" are references to the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, §1; 18 Pa. C.S. §101, et seq. in which all crimes are classified as follows:

Misdemeanors of the third degree punishable by a maximum sentence of one year imprisonment and/or a $2,500 fine;

Misdemeanors of the second degree punishable by a maximum sentence of two years imprisonment and/or a $5,000 fine;

Misdemeanors of the first degree punishable by a maximum sentence of five years imprisonment and/or a $10,000 fine;

Felonies of the third degree punishable by a maximum sentence of seven years imprisonment and/or a $15,000 fine;

Felonies of the second degree punishable by a maximum sentence of ten years imprisonment and/or a $25,000 fine; and,

Felonies of the first degree punishable by a maximum sentence of twenty years imprisonment and/or a $25,000 fine.

the given ranges of sentences where mitigating or aggravating circumstances are present. 42 Pa. C.S. §2154. These standards fall well within the "intelligible principle" requirement and, thus, the delegation to the sentencing commission of the power to promulgate guidelines is not violative of the prohibition against the delegation of legislative authority. Commonwealth v. Taylor,      Pa. Super.    , 479 A.2d 1108 (1984).

Defendants would have this court declare the sentencing guidelines unconstitutional because Act 319-1978 contains a legislative veto clause similar to the one struck down by the United States Supreme Court in its recent decision in the case of INS v. Chadha, 462 U.S. 919, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983). In Chadha, the United States Supreme Court held that the retention by congress of the power to veto the act of the attorney general suspending deportation proceedings, violated the constitutional doctrines of separation of powers and the constitutional requirement that legislation be accomplished by approval of both Houses of Congress and presentment to the President of the United States. Chadha, 462 U.S. 919, 103 S. Ct. at 2779-2783. The court further held that congress may legislate and grant certain power but it may not revoke that power granted without enacting further legislation. Subsequent decisions by the Supreme Court have made it clear that Chadha is not limited to its facts, but represents a blanket invalidation of all legislative vetos contained in federal statutes.[5]

5. Process Gas Consumers Group v. Consumers Energy Council of America; Interstate Natural Gas Association of America v. Consumer Energy Council of America; Petrochemical Energy Group v. Consumer Energy Council of America; American Gas Association v. Consumer Energy Council of

Of course, Chadha is not dispositive of the issue before this court. The constitutionality of Act 319-1978 must be decided pursuant to the provisions of the Constitution of the Commonwealth of Pennsylvania. This court has examined the bicameral approval and presentment provisions of the Pennsylvania Constitution,[6] with particular attention to Article III, §9, which states:

"Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the question of adjournment, shall be presented to the Governor and before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill."

The legislative veto provision of Act 319-1978 is contained in Section 2155(b) which provides as follows:

(b) Rejection by General Assembly.—

The General Assembly may by concurrent resolution reject in their entirety any initial or subsequent guidelines adopted by the Commission within 90 days of their publication in the Pennsylvania Bulletin pursuant to subsection (a) (2).

This provision only comes into play when the legislature wishes to disapprove the proposed guidelines. Where the legislature approves of the guidelines, as

---

America; United States Senate v. Consumer Energy Council of America; United States House of Representatives v. Consumer Energy Council of America; United States Senate v. Federal Trade Commission; and United States House of Representatives v. Federal Trade Commission, 51 U.S. L.W. 3935 (U.S. decided June 28, 1983) (judgments of Courts of Appeals striking down various legislative vetos as being unconstitutional affirmed per curiam, without opinion).

6. Article II, §1, Article III, §1, Article III, §4, Article III, §8, Article III, §9, Article IV, §15.

they did in the case of the present guidelines, the guidelines become effective under Section 2155(c) 180 days after publication in the Pennsylvania Bulletin without any affirmative action on the part of the legislature.

This court is convinced that applying the Chadha majority's stringent analysis to the Constitution of Pennsylvania leads to the inevitable conclusion that the veto contained in Act 319-1978 is violative of the bicameral approval and presentment clauses of the Pennsylvania Constitution. There is no evidence in the history of constitutional enactment in Pennsylvania that would lead to a contrary conclusion. The language of the bicameral approval and presentment clauses of the Pennsylvania Constitution has existed since the Constitution of 1784 and was readopted by the Constitutional Convention of 1968 when the clauses were renumbered without comment. Pa. Const., Art. 3, §9.[7]

Pennsylvania's first constitution, enacted in 1776, required that all *bills* of a public nature" had to be printed after being introduced and had to be held over to the following session of the legislature before adoption. Pa. Const. §15 (1776). However, Section 20 of this same constitution, provided for enactment of legislation entitled "resolves" as "urgent temporary legislation" without any printing or layover re-

---

7. The Commonwealth's argument that since the legislative veto was a commonly used device in 1968, an implied approval of the legislative veto should be read into the present Pennsylvania Constitution, is unpersuasive. This court notes that in 1968 there were only 125 federal statutes employing the legislative veto, Chadha, supra at 2781. The Commonwealth could not produce, nor could the court find, any Pennsylvania statutes then in existence employing this mechanism. Moreover, this is too important an issue to imply approval from total silence.

quirements. Pa. Const. §20 (1776). Using Section 20, the Pennsylvania legislature routinely circumvented the requirements of Section 15 by adopting "resolves" as opposed to "bills." In 1783, the Council of Censors, a state body historically responsible for reviewing the Pennsylvania government's adherence to its Constitution, charged that the obviation of Section 15's requirements was unconstitutional. Journal of the Council of Censors, at pp. 137-143 (November, 1783).

Armed with this information, the Pennsylvania Constitutional Convention convened in 1784, enacted Pennsylvania's current bicameral approval and presentment clauses. Report of the Council of Censors (1784).

Three years later when the Federal Constitutional Convention met in Philadelphia, the framers were aware of the Report of the Council of Censors and were equally concerned with limiting the methods of enacting new legislation. Chadha, supra at 2800. As a result of this concern, the Federal Constitution incorporated its own bicameral approval and presentment clauses based on the Pennsylvania experience. Chadha, supra at fn. 17.

The bicameral approval and presentment provisions of both the Federal and Pennsylvania Constitutions are similar in language and intent. There is no evidence that the exhaustive constitutional analysis set forth in Chadha would be inapplicable to the Constitution of Pennsylvania or that it would lead to a different result.

Since the instant case concerns a situation where the veto was not exercised and this court has found the veto clause of Act 319-1978 to be severable (see discussion, infra at pp. 12-13), for purposes of this

opinion, this court will consider the veto provision to be unconstitutional.[8]

Herein, no rights of defendants have been affected by the exercise of the veto, and in fact no veto has been exercised. Thus, the present guidelines can stand if the veto provision of the act is severable from the remainder of the act. Equal Employment Opportunity Commission v. Hernando Bank, Inc.,

---

8. This court is aware that in a future case concerning an exercised veto, a court of equal or higher jurisdiction may follow the analysis contained in Justice White's dissent in Chadha, supra at 2792, et seq. Justice White was highly critical of the majority's sweeping condemnation of all legislative veto provisions, particularly those concerning legislative oversight of a rule-making function such as we have here. In dissenting from the majority's affirmance, without opinion, of various courts of appeals decisions overturning such provisions as unconstitutional (see cases cited at fn. 5), Justice White stated:

"I canot agree that the legislative vetos in these cases violate the requirements of Article I of the Constitution. Where the veto is placed as a check upon the actions of the independent regulatory agencies, the Article I analysis relied upon in Chadha has a particularly hollow ring. In Buckley v. Valeo, 424 U.S. 1, 284-285 and n. 30 (1976), I set forth my belief that the legislature veto as applied to rules promulgated by an independent regulatory agency fully comports with the Constitution.

'[F]or a regulation to become effective, neither house need approve it, pass it, or take any action at all. The regulation becomes effective by non-action. This no more invades the President's powers than does a regulation not required to be laid before Congress. Congressional influence over the substantive content of agency regulation may be enhanced, but I would not view the power of either House to disapprove as equivalent to legislation or to an order, resolution, or vote requiring the concurrence of both Houses. . . . Disapproval nullifies the suggested regulation and prevents the occurrence of any change in the law. The regulation is void. Nothing remains on which the veto power could operate. It is as though a bill passed in one house and failed in another.' "

724 F.2d 1188 (5th Cir. 1984). Compare Equal Employment Opportunity Commission v. All State Insurance Company, 570 F. Supp. 1224 (S.D. Miss. 1983).[9]

It is well-settled that, "under Pennsylvania law, separate provisions of a statute are presumed severable, and any particular one will survive a decision voiding another unless it is so interrelated with the void provision or incomplete without it that the legislature could not have intended it to stand alone." Stoner v. Presbyterian University Hospital, 609 F.2d 109, 112 (3d Cir. 1979). See also 1 Pa. C.S. § 1925. This court must then inquire, whether there is any evidence to support the view that the legislature would not have established a sentencing commission and given it the power to promulgate guidelines, unless it had been able to reserve to itself the veto power over such guidelines. There is no such evidence. The overriding purpose of Act 319-1978 was to bring about greater uniformity in sentencing throughout the Commonwealth. The legislative mechanism for accomplishing this purpose was to set up the sentencing commission and to give it the power to promulgate guidelines which would have to be considered by judges in imposing sentence. This purpose can be accomplished without any dependence on the existence of the legislative veto. In fact, the legislature has in the past given even great-

9. Defendants claim that the current guidelines are unconstitutional because they became law as a result of Senate action alone, thus violating the bicameral approval and presentment provisions of the Pennsylvania Constitution, citing Senate Resolution No. 227. (See footnote 2, supra). This claim does not withstand scrutiny. Senate Resolution No. 227 approving the guidelines was legislative surplusage. It had no legal effect whatsoever and its constitutional validity need not be discussed.

er power over length of sentence to the parole board without reserving such an oversight mechanism.[10]

In addition, in 1980, the legislature specifically repealed the severability clause of Act 319-1978, which had made no part of the act severable, when it transferred an amended version of Act 319 to Title 42 in Act 142-980 (Judiciary Act repealer act). At the same time, the legislature enacted a specific "non-severability" clause as part of Act 142-1980 providing that only two sections of the 1980 Act were not severable (42 Pa. C.S. §9781(a), relating to appellate review of sentence and §6 of the Act of November 26, 1978 appropriating $100,000 to the Pennsylvania Commission on Sentencing). By so doing, the legislature indicated its intention that the various sections of Act 319-1978 as they appear in Act 142-1980 are severable including the veto provision in question here.

Finally, defendants argue that if the veto is unconstitutional, the present guidelines must fall because without the 1981 veto, the 1981 guidelines would have become effective and the present guidelines would not exist. They conclude that the present guidelines can only stand if the 1981 veto was a valid legislative act. This court does not agree. This court holds that the sentencing commission was properly established and its authority properly delegated under the Constitution of the Commonwealth of Pennsylvania (See discussion, supra). The guidelines adopted by it are, therefore, effective. The fact that in adopting them the commission may have been motivated by an unconstitutional act of the legislature is irrelevant and would not be

10. 61 P.S. §331.17.

grounds for this court to disregard the guidelines in imposing sentence at the present time.[11]

For the reasons set forth above, this court finds that the present sentencing guidelines promulgated by the Sentencing Commission of Pennsylvania pursuant to Act 319-1978 at 42 Pa. C.S. §2155 are not violative of either the Pennsylvania or United States Constitutions and the post-verdict motions are denied.

---

11. What would have happened absent the 1981 veto is, at most, mere conjecture and cannot be considered here. Defendants' sina qua non argument is invalid. The commission could have adopted amended guidelines at any time under its constitutionally delegated authority.