**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**Civ. A. No. 81–72347.**

United States District Court, E.D. Michigan, S.D.

Jan. 24, 1984.

See also 546 F.Supp. 54.

Dorothy M. Smith, Jan C. Leventer, Emory J. Bailey, Detroit, Mich., for plaintiff.

Thomas G. Kienbaum, Joseph C. Marshall, III, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiff Equal Employment Opportunity Commission ("EEOC") brought this action against defendant Chrysler Corporation ("Chrysler"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* This matter is now before the Court on Chrysler's motion to dismiss or for summary judgment. The parties have extensively briefed the issues and presented oral argument to the Court. For the following reasons, Chrysler's motion is hereby denied.

Chrysler's motion is based on the recent decision of the Supreme Court in *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), in which the Court held that a legislative device known as the legislative veto is unconstitutional. Plaintiff Chadha was an East Indian who was in the United States on a student visa. An immigration judge held that he was deportable for having remained in the United States beyond the expiration of his visa, but permitted him to apply to the Attorney General for a suspension of his deportation. The Attorney General was authorized to grant such a suspension under 8 U.S.C. § 1254(a)(1), and did grant a suspension to Chadha.

Under 8 U.S.C. § 1254(c)(1), the Attorney General was required to report to Congress each time he exercised his power to suspend a deportation. Under § 1254(c)(2), either House of Congress was authorized to pass a resolution stating that it did not concur with the Attorney General's decision; upon passage of such a resolution, the Attorney General was required to deport the alien.

The House of Representatives did pass a resolution disapproving the Attorney General's decision not to deport Chadha, and the I.N.S. instituted deportation proceedings. Chadha appealed his deportation order to the Court of Appeals for the Ninth Circuit, arguing that the legislative veto by the House was unconstitutional. The Ninth Circuit agreed, holding that the action of the House was unconstitutional, and ordered the Attorney General to cease and desist in the deportation proceedings. *Chadha v. I.N.S.,* 634 F.2d 408 (9th Cir. 1980).

On review, the Supreme Court affirmed. The Court held that the House's action constituted legislative action, and could be effected only by passage of legislation by both Houses of Congress and presentment to the President. The Court found it "crystal clear" that under the Constitution, any legislative action was invalid unless this procedure was followed. 103 S.Ct. at 2788.[1] Defining legislative action as "action which had the purpose and effect of altering the legal rights, duties, and relations of persons, including the Attorney General, Executive Branch officials and Chadha, all outside the legislative branch", the Court found that the one-House veto was legislative in character. *Id.* at 2784. The Court noted that in the absence of the legislative veto provision, neither House would have been able to order the deportation of an alien without passage by the other House and presentment to the President. The Court held not only that the House's *exercise* of the legislative veto was unconstitutional, but also that the mere enactment of a statute which conferred a

---

1. The Court did note that the Constitution provides explicitly for four legislative actions which can be performed by one House alone, without presentment to the President. *Id.* at 2786. The Court found that the one-House veto was not one of these acts, and noted that when the drafters of the Constitution intended to confer legislative power on one House alone, they had done so in unambiguous terms.

legislative veto power was unconstitutional as well:

> We hold that the *Congressional veto provision in § 244(c)(2)* is severable from the Act and that it is unconstitutional.

*Id.* at 2788 (emphasis added).

The statutory scheme which is at issue on this motion is nearly identical to that involved in *Chadha*. When originally enacted, the ADEA was to be enforced by the Department of Labor, not the EEOC. Pub.L. 90–202, 81 Stat. 602, 29 U.S.C. § 621 *et seq.* (1967). The Reorganization Act of 1977, 5 U.S.C. § 901 *et seq.*, conferred upon the President the authority to formulate plans for reorganizing the structure and functions of federal agencies. The Act required the President to submit every reorganization plan to Congress. Upon submission of a plan, a resolution disapproving the plan was to be introduced automatically in both the House and Senate. 5 U.S.C. §§ 909, 910. A designated committee in each House was required to make recommendations on the resolution within 45 days. *Id.* If a committee failed to make a recommendation within this period, the resolution of disapproval was to be placed automatically on the calendar of the respective House; thereafter, any member of that House could move to consider the resolution. If neither House passed the resolution of disapproval within 60 days after submission of the proposal, the proposal became law. 5 U.S.C. § 906. Conversely, either House could veto the President's plan by passing the resolution. *Id.*

In President Carter's Reorganization Plan No. 1 of 1978, enforcement of the ADEA and the Equal Pay Act, 29 U.S.C. § 206, was transferred from the Department of Labor to the EEOC. The purpose of this reorganization was to place the enforcement power for all antidiscrimination statutes in the same agency. Pursuant to the statute, resolutions of disapproval were introduced in the House and the Senate. The House voted on the resolution, but it was overwhelmingly defeated. The Senate never voted on the resolution. Accordingly, the President's plan was implemented, and the EEOC ultimately brought this action seeking to enforce the ADEA.

Chrysler now argues that it is unconstitutional for the EEOC to enforce the Act and bring this action. It argues that under *Chadha*, it was an unconstitutional act for Congress to reserve a legislative veto power in § 906 of the Reorganization Act. It further argues that because of the legislative history of the Reorganization Act, § 906 cannot be severed from the remainder of the Act. Therefore, defendant argues, the entire Reorganization Act is unconstitutional, there was no constitutional basis for the President's plan transferring enforcement of the ADEA to the EEOC, and the EEOC has no power to prosecute this lawsuit.

After *Chadha*, it is indeed "crystal clear" that the legislative veto provision in the Reorganization Act is unconstitutional; the EEOC does not even argue to the contrary. The EEOC makes four arguments, however, in opposition to defendant's motion to dismiss this action. The EEOC asserts that:

A. The legislative veto provision is severable from the remainder of the Reorganization Act;

B. Defendant has no standing to challenge the EEOC's power to prosecute this action;

C. Even if the President's transfer of enforcement power to the EEOC *was* unconstitutional, Congress has cured this defect by ratifying the transfer through subsequent legislation which was passed by both Houses and presented to the President; and

D. *Chadha* should not be applied retroactively to invalidate legislative actions which occurred before that decision.

Any one of these arguments, if sustained, would require that defendant's motion be denied.[2]

---

**2.** Only two other district courts have assessed the constitutionality of the Reorganization Act

since *Chadha* was decided. In *EEOC v. Allstate Ins. Co.,* 32 FEP Cases 1337 (S.D.Miss.1983), the

## A. SEVERABILITY

■ If § 906 is severable from the remainder of the Reorganization Act, then the transfer of enforcement power pursuant to § 903 is arguably not tainted by its unconstitutionality. If, on the other hand, § 906 is inseverable, then the entire Reorganization Act is unconstitutional. There is a presumption that an unconstitutional portion of a statute should be severed from the rest of the statute. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The fundamental consideration in determining whether § 906 is severable, however, is congressional intent. The Court must determine whether "the Legislature would ... have enacted those provisions that are within its power, independently of that which is not." *Id.* at 108, 96 S.Ct. at 677.

■ The EEOC argues that Congress would have enacted the Reorganization Act even if no legislative veto provision had been present in the Act. It argues that Congress clearly recognized the need for executive reorganization, and that it enacted this Act despite its apprehension that the legislative veto provision might well be unconstitutional. It notes that Congress had earlier (in 1933) enacted a similar Reorganization Act without reserving any legislative veto power. It further notes that the Reorganization Act of 1977 also included other provisions which placed limits on the power conferred on the President. 5 U.S.C. § 905. The EEOC concludes that Congress did not intend that all reorganizations which occurred under the President's plans should later be undone by the courts if the legislative veto provision was found to be unconstitutional.

This conclusion does not fairly state the issue to be resolved, however. The issue is whether Congress would have enacted this statute without including § 906. Chrysler has presented persuasive evidence that it would not have, and the Court finds that § 906 is not severable from the remainder of the Act.

The Reorganization Act which was finally enacted was a compromise between a bill sponsored by the Administration and a bill which was initially introduced in the House. The Administration bill provided for a legislative veto by either House of Congress of any plan proposed by the President. The original House bill, on the other hand, provided that no reorganization plan would be given effect unless both Houses approved it and it was presented to the President for signature. The House bill, patterned after "traditional" Article I mandates, was designed to alleviate fears that a legislative veto was unconstitutional. The compromise bill included the legislative veto proposed by the Administration, but gave Congress greater control over the President's proposals. Unlike the Administration bill, it provided that resolutions of disapproval would automatically be introduced in both Houses each time the President submitted a plan to Congress. It provided that these resolutions would automatically be placed on the calendar of each House, and that any member could move for consideration of the resolution. The legislative history of the Act indicates that this provision was of critical importance to many members of Congress. Indeed, Representative Brooks, the sponsor of the original House bill, stated:

> ... I have chosen to support (the compromise bill), however, *because I believe the new voting procedure*—which was taken from my bill—and the limitations on the use of reorganization authority to which the committee agreed, *will pro-*

court granted summary judgment to the defendant in an action brought by the EEOC to enforce the Equal Pay Act. The court found that the one-House veto provision in the Act was clearly unconstitutional under *Chadha,* and rejected all of the similar arguments which were made by the EEOC.

In *Muller Optical Co. v. EEOC,* 574 F.Supp. 946 (W.D.Tenn.1983), on the other hand, the court denied a preliminary injunction prohibiting the EEOC from enforcing the ADEA. The court held that the plaintiff did have standing to assert the constitutional argument, but held that the legislative veto provision was severable from the remainder of the Act and that Congress had ratified the transfer of enforcement power through subsequent legislation.

*vide Congress with far more control over reorganization than would have been the case if the President's proposals had gone through unchallenged.*
123 Cong.Rec. 9344 (emphasis added). Although this does not conclusively establish that Congress would not have enacted the Reorganization Act without the legislative veto provision, the views of the bill's sponsor "(deserve) to be accorded substantial weight in interpreting the statute." *Federal Engineering Administration v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976).

It is absolutely clear that Congress wanted to retain the power to disapprove *every plan* submitted by the President, and that the legislative veto provision was an indispensable part of the statute which was finally enacted. Although Congress recognized the need for administrative reorganization, it appears highly improbable that Congress would have enacted the remainder of the Reorganization Act if the legislative veto provision had not been present. Accordingly, the veto provision is not severable from the remainder of the Act, and the entire Act is, therefore, unconstitutional.

### B. STANDING

■ The EEOC contends that defendant has no standing to challenge the constitutionality of the Reorganization Act. The Court initially notes that doctrines of standing normally apply only to a *plaintiff's* right to bring suit, while the EEOC is now challenging a *defendant's* right to assert a defense. The cases cited by the EEOC in this regard are inapposite. In *Brown v. U.S.*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), for example, the Court merely held that a criminal defendant has no "standing" to claim a Fourth Amendment violation when he did not own the items which were seized. That case does not involve an issue of standing to sue; it is actually a limitation on the sub-

stantive law under the Fourth Amendment. It is axiomatic that every defendant has the right to challenge the plaintiff's right to sue; the EEOC's argument to the contrary is without merit.

■ In any event, the EEOC argues that Chrysler lacks standing for three reasons. First, the EEOC argues that defendant has suffered no "injury in fact" because neither House actually exercised the legislative veto power which was reserved in the Reorganization Act. This argument misperceives the scope of the Court's holding in *Chadha*. As noted above, the Court did not hold merely that it was unconstitutional for the House to exercise the legislative veto. The Court held that it was unconstitutional for Congress to *reserve* a legislative veto power, whether or not it was exercised. Therefore, § 906 of the Reorganization is unconstitutional on its face; it is irrelevant that neither House actually exercised the veto power. Because § 906 is not severable from the remainder of the Act, the entire Act is unconstitutional. It is clear that defendant *has* suffered "injury in fact" under the statute as a whole. It is the defendant in a lawsuit which was brought by an agency with no constitutional power to prosecute the suit. It is faced with the certain prospect that it will incur additional attorney fees and costs, and the possibility that it will be subject to substantial liability. It surely has suffered "injury in fact" sufficient to challenge the EEOC's authority to sue.[3]

Second, the EEOC makes the related argument that the defendant's challenge is not ripe for adjudication, because neither House exercised the legislative veto here. The EEOC relies on *Clark v. Valeo*, 559 F.2d 642 (D.C.Cir.1977). This was a pre-*Chadha* case, of course, and the Court found that the question was not ripe there because "the one-house veto is (not) so patently unconstitutional that nothing more is needed to inform the judgment of the court." *Id.* at 649. After *Chadha*, § 906

3. The EEOC, in fact, argues that *no one* has standing to challenge the constitutionality of the Reorganization Act. The Court cannot accept

this novel argument, as it is unsupported by any authority and is patently illogical.

*is* patently unconstitutional, and the EEOC's reliance on *Clark* is misplaced.

Finally, the EEOC argues that defendant cannot show that this action would have been prosecuted any differently by the Department of Labor. The EEOC argues that defendant would still be subject to suit, no matter what federal agency brought suit. Chrysler argues that there *is* reason to believe that this action would have been prosecuted differently by the Department of Labor, both because of the difference in policy views between the Department of Labor and the EEOC, and because of the actions of the attorneys prosecuting this case for the EEOC. The Court finds this dispute to be immaterial. If the EEOC has no constitutional power to prosecute this lawsuit, it is irrelevant whether an agency with such power would have proceeded in the same or a different manner. In sum, none of the EEOC's arguments on standing have merit. Defendant is clearly entitled to challenge the EEOC's authority to prosecute this suit.

## C. LEGISLATIVE RATIFICATION

■ The EEOC argues that even if the transfer of enforcement power under the Reorganization Act was unconstitutional, this defect has been cured by subsequent legislation, passed by both Houses and presented to the President, which ratified the transfer. The EEOC points out that in the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 note, Congress enacted a provision that "any provision in either Reorganization Plan Numbered 1 or 2 of 1978 inconsistent with any provision in this Act is hereby superseded." The EEOC argues that this Act ratified the validity of the reorganizations which occurred under the President's plans; otherwise, it would not have been necessary to provide that inconsistent portions of those plans would be superseded.

The EEOC also points out that Congress has subsequently passed appropriations bills which appropriate funds to the EEOC to enforce the ADEA. The EEOC argues that this also reflects Congressional approval of the transfer of enforcement power.

■ The Court cannot accept these arguments. It is well settled that there is no ratification unless the subsequent legislation plainly shows an intent to ratify the transfer. Ratification will not lightly be inferred from subsequent legislation, especially from appropriations alone. *See Greene v. McElroy*, 360 U.S. 474, 507, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377 (1959):

> [I]t must be made clear that the President or Congress, within their respective constitutional powers, specifically has decided that the imposed procedures are necessary and warranted and has authorized their use.... Such decisions cannot be assumed by acquiescence or nonaction .... They must be made explicitly ... because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws.

The Civil Service Reform Act of 1978 made no reference to a transfer of enforcement power to the EEOC; it merely referred generally to prior Reorganization Plans. Moreover, appropriations bills do not provide a basis for ratification of earlier acts. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). The subsequent legislation here was clearly insufficient to ratify the transfer of enforcement power to the EEOC.

## D. RETROACTIVE APPLICATION

Finally, the EEOC argues that *Chadha* should not be applied retroactively to invalidate legislation which was enacted prior to that decision. The Court did not state explicitly in *Chadha* whether its decision was to be applied prospectively only.[4] It is

---

4. It appears that the Court implicitly recognized that the issue of retroactive application should be decided on a case-by-case basis. Because

each statute affected by *Chadha* presents a unique problem, it would be difficult to formu-

apparent that at least two Justices believed that *Chadha* would be applied retroactively:

> The Court's decision ... apparently will invalidate every use of the legislative veto. The breadth of this holding gives one pause. Congress has included the veto in literally hundreds of statutes, dating back to the 1930s.

103 S.Ct. at 2788 (Powell, J. concurring)

> Today the Court ... sounds the death knell for nearly 200 other statutory provisions in which Congress has reserved a "legislative veto". For this reason, the Court's decision is of surpassing importance.

\* \* \*

> Today's decision strikes down in one fell swoop provisions in more laws enacted by Congress than the Court has cumulatively invalidated in its history.

103 S.Ct. at 2792, 2810 (White, J. dissenting). Nevertheless, because the Court's opinion did not address the issue, the question of whether the decision is to be applied retroactively must be determined by reference to the general principles applied in other cases.

■■■■ There is a presumption that decisions *will* be applied retroactively. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Three separate factors must be considered in determining whether to apply a decision prospectively only. First, prospective-only application is proper only if the decision either overruled past precedent or decided an issue of first impression whose resolution was not clearly foreshadowed. Second, it must be determined whether retroactive application will further the purpose of the decision. Third, the Court must determine whether retroactive application would cause an inequitable result. *Id.* The EEOC bears the burden here of showing that all three of these factors favor prospective-only application. *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

■■■■ The first requirement is satisfied here. The Supreme Court had never before ruled on the constitutionality of the legislative veto, and *Chadha* therefore did not overrule any precedent. While it was "clearly foreshadowed" that the Court would eventually be faced with the issue presented in *Chadha,* it cannot be said that the Court's resolution of that issue was clearly foreshadowed. *See Buckley v. Valeo, supra.*

The second requirement is satisfied as well. It can be assumed that after *Chadha,* Congress will no longer enact legislation reserving a legislative veto power. If the EEOC were to file a new complaint under the ADEA, it might be proper to hold that it has no authority to do so. Where the action has been pending for two years, however, the Court cannot conclude that the action must be dismissed to ensure that Congress will comply with the mandates of *Chadha* in the future.

The most compelling reason to deny retroactive application is that it would be extremely unfair to the individual claimants in this suit to do so. Chrysler suggests that if its motion is granted, the claimants will merely be represented by the Department of Labor rather than by the EEOC. Chrysler, however, has provided no authority for its argument that this would be the result; it is also possible that the claimants could be left with no remedy at all. Chrysler apparently recognizes this possibility as well; it states in its reply brief that "whatever 'substantive inequitable results' may flow from the retroactive application of *Chadha* in this case will be on the hands of the Executive and Legislative Branches, not the Judiciary." *Id.* 424 U.S. at 56, 96 S.Ct. at 652. This hardly constitutes a reason to apply *Chadha* retroactively. Retroactive application would be unfair to these innocent claimants who filed claims with the EEOC under the then-correct belief that the EEOC was the proper agency to enforce the ADEA. Because this and

late a rule which could be uniformly applied to each such statute.

the other factors of *Chevron* are satisfied, the Court will not apply *Chadha* retroactively to dismiss the EEOC as a plaintiff.

In sum, the legislative veto provision in § 906 of the Reorganization Act is unconstitutional. It cannot be severed from the remainder of the Act, and the entire Act is therefore unconstitutional. Chrysler clearly has standing to raise this defense, and Congress has not ratified the transfer of enforcement power through subsequent legislation. It would not be proper to apply *Chadha* retroactively to dismiss the EEOC as a plaintiff, however, primarily because it would be unfair to the claimants in the suit. For that reason, defendant's motion to dismiss is hereby denied.[5]

IT IS SO ORDERED.

---

**5.** Chrysler has made the independent argument that the Reorganization Act was unconstitutional because it constituted a standardless delegation of power. This is a rather bold argument, as the Court has not set aside a delegation of legislative power on this basis since the New Deal cases of *Schecter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) and *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). In any event, the delegation of power in the Reorganization Act was accompanied by a clear recitation of several factors which the President was to consider in formulating reorganization plans. 5 U.S.C. § 901.