**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DAYTON POWER & LIGHT COMPANY, Defendant.**

**No. C–3–83–553.**

United States District Court, S.D. Ohio, W.D.

July 10, 1984.

**14**

Elliott V. Porter, E.E.O.C. Cleveland Dist. Office, Cleveland, Ohio, for plaintiff.

David M. Duwel, DP & L Legal Dept., Dayton, Ohio, Thomas J. Manley, Raleigh, N.C., Neil J. Freund, Dayton, Ohio, for defendant.

### DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RICE, District Judge.

In this action, Plaintiff Equal Employment Opportunity Commission ("EEOC")

alleges that Defendant Dayton Power & Light ("D.P. & L.") has violated the Equal Pay Act, 29 U.S.C. § 201 *et seq.* This cause is now before the Court on D.P. & L.'s motion for summary judgment (doc. #10), based on the assertion that the EEOC is without lawful authority to enforce the Equal Pay Act.

Before 1978, the authority to bring an action to enforce the Equal Pay Act resided with the Secretary of Labor. *See* 29 U.S.C. § 216(b) and (c). However, in Reorganization Plan No. 1 of 1978, *reprinted in,* 1978 U.S.Code & Ad.News 9795, 9799, President Carter transferred that authority to the EEOC.

In shifting the enforcement responsibility to the EEOC, President Carter acted under the authority granted to the President by the Reorganization Act of 1977, 5 U.S.C. § 901 *et seq.* The Reorganization Act of 1977 authorized the President to develop and to transmit to both Houses of Congress plans for the reorganization of the Executive Branch. 5 U.S.C. § 903. Under that Act, the reorganization plan becomes effective unless within 60 calendar days of continuous sessions of Congress after the plan is transmitted, either House passes a resolution disapproving of the plan. 5 U.S.C. § 906(a).

After President Carter transmitted Reorganization Plan No. 1 of 1978 to the Congress, neither House passed a resolution disapproving of the Plan. The House defeated such a resolution on April 25, 1978. 124 Cong.Rec. 11336–37 (1978). A resolution of disapproval was introduced in the Senate; however, consideration of it was indefinitely postponed. 124 Cong.Rec. 7124 (1978). Thereafter, President Carter ordered Reorganization Plan No. 1 to be implemented. Exec.Order No. 12144, 44 Fed. Reg. 37193 (1979).

D.P. & L. argues that the transfer of authority to enforce the Equal Pay Act from the Secretary of Labor to the EEOC is invalid for three reasons. First, D.P. & L. asserts that the inclusion of the legislative veto in the Reorganization Act of 1977

violates the bicameralism requirement and Presentment Clause of the Constitution. Second, D.P. & L. asserts that the same legislative veto violates the separation of powers doctrine. Third, D.P. & L. contends that the Reorganization Act of 1977 was an unlawful delegation of legislative authority. D.P. & L. concludes that since the transfer of enforcement power to the EEOC was not valid, the EEOC is without authority to enforce the Equal Pay Act.

For the reasons set forth below, this Court concludes that the EEOC has the authority to enforce the Equal Pay Act. In reaching this conclusion, the Court follows the reasoning and result reached by the Fifth Circuit in *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188 (5th Cir.1984).

Initially, the Court will address the delegation issue, followed by a discussion of the issues related to the inclusion of the legislative veto provision in the Reorganization Act.

■ A. D.P. & L. argues that the Reorganization Act was an unlawful delegation of legislative authority to the President, by Congress.[1] This Court does not agree.

Not since 1935 has the Supreme Court invalidated a delegation of authority to the Executive Branch by Congress because such delegation constituted an unlawful delegation of legislative power. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). In recent years, the Supreme Court has approved a variety of broad delegations of authority. *See e.g., Federal Energy Administration (FEA) v. Algonquin SNG, Inc.*, 426 U.S. 548, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976); *National Cable Television Ass., Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); *Lichter v.*

United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); *National Broadcasting Co. v. United States*, 319 U.S. 190, 63 S.Ct. 991, 81 L.Ed. 1344 (1943). *See also,* 1 K.C. Davis, *Administrative Law Treatise* 149–77 (2d ed. 1978).

The Supreme Court has set forth a test to determine whether a delegation of legislative power is permissible: "If Congress shall lay down by legislative act an intelligible principle to which the [President] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *FEA v. Algonquin SNG, Inc., supra,* 426 U.S. at 559, 96 S.Ct. at 2302 (quoting *Hampton & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)). In applying this test, courts should recognize that " '[n]ecessity ... fixes a point beyond which it is unreasonable and impracticable to compel Congress to prescribe detailed rules....' " *Id.* 426 U.S. at 600, 96 S.Ct. at 2302 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946)).

Applying these standards to the Reorganization Act of 1977, this Court concludes that the delegation of authority in that act is not a "forbidden delegation of legislative power." *Accord EEOC v. Hernando Bank, supra,* 724 F.2d at 1192. The Reorganization Act does provide intelligible principles that govern the President's exercise of authority. Section 901(a)(1)–(6) set forth the policies that underly the Act. At any time the President determines that changes in the organization of the Executive Branch are necessary to further those policies, the President is to prepare a reorganization plan. 5 U.S.C. § 903(a). The President is to transmit such a plan to Congress together with a declaration that he has found the reorganization necessary

---

[1] To the extent that D.P. & L. argues that it is *per se* unlawful for Congress to delegate to the Executive the authority to reorganize the Executive department of government, this Court rejects such a contention. Throughout the years, courts have not favored challenges to reorganization acts on the basis of unlawful delegation of authority. *See, e.g., Federal Trade Commis-* *sion v. Gibson*, 460 F.2d 605, 607 (5th Cir.1972) (Rejecting, as frivolous, argument that Reorganization Act of 1949 was an unlawful delegation of legislative authority.); *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188, 1192 (5th Cir.1984) (Reorganization Act of 1977 a valid delegation of legislative authority.).

to carry out one of the policies set forth in § 901(a). *Id.* Further, the Act imposed specific limitations upon the President's authority to develop reorganization plans. 5 U.S.C. § 905.

Based on the foregoing, the Court overrules that branch of D.P. & L.'s motion for summary judgment in which D.P. & L. contends that the Reorganization Act of 1977 constituted an unlawful delegation of the legislative function.

B. The main thrust of D.P. & L.'s motion is that the existence of a legislative veto, whether or not it is exercised, makes the Reorganization Act of 1977 unconstitutional. D.P. & L. asserts two grounds for this premise. First, relying on *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), D.P. & L. argues that the legislative veto violates the bicameralism requirement[2] and the Presentment Clauses, Art. I, § 7, cls. 2, 3 of the Constitution. Second, D.P. & L. asserts that the legislative veto otherwise violates doctrine of separation of powers.[3]

In *Chadha*, the Supreme Court held that a one house legislative veto provision contained in § 244(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2) was unconstitutional because it violated the bicameralism requirement and Presentment Clauses. Under § 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), the Congress granted the Attorney General authority to suspend deportation of certain deportable aliens. Under § 244(c)(1), the Attorney General is to report to Congress whenever he exercises his discretion and decides to suspend the deportation of any alien. Section 244(c)(2) provided that the decision of the Attorney General became final if neither the Senate nor the House of Representatives pass a resolution disapproving of the Attorney General's decision.

In *Chadha*, the Attorney General decided to suspend the deportation of Jagdish Rai Chadha, 103 S.Ct. at 2770. The Attorney General conveyed this information to Congress. *Id.* Subsequently, the House of Representatives passed a resolution opposing the suspension of Chadha's deportation. *Id.* 2771–72. Subsequently, Chadha brought suit, claiming that the legislative veto was unconstitutional. The Supreme Court upheld Chadha's legal position, thus striking down as unconstitutional the legislative veto.

In the present case, the EEOC concedes that the legislative veto in the Reorganization Act of 1977 is invalid under *Chadha*. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (doc. # 24) at 8. Therefore, the Court starts with the premise that the legislative veto herein, even though not exercised, is unconstitutional. Accordingly, the Court need not and does not address D.P. & L.'s contention that the legislative veto in question otherwise violates the separation of powers doctrine. *See Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis J. concurring).

As stated above, the EEOC does not argue that the legislative veto in the present case is constitutional. However, the EEOC does not concede that it is, therefore, without authority to enforce the Equal Pay Act. Rather, the EEOC argues that it has authority to enforce the Equal Pay Act because the legislative veto is severable from the remainder of the Reorganization Act of 1977, and, in any event, Congress has ratified the transfer of authority to the EEOC.[4] The Court will discuss the

---

**2.** The bicameralism requirement is found in Art. I, §§ 1 and 7 of the Constitution.

**3.** The Court's holding in *Chadha* was based on the doctrine of separation of powers. *See* 103 S.Ct. at 2780–84. Herein, D.P. & L. argues that the legislative veto otherwise violates the separation of powers doctrine because it impairs the right of the judiciary to exercise judicial review and usurps functions central to the Executive Branch. See doc. # 10 at 12–16.

**4.** The EEOC also argues that *Chadha* should not be applied retroactively to invalidate the Reorganization Act of 1977. *See e.g. Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 87–89, 102 S.Ct. 2858, 2880, 73 L.Ed. 598 (1982). This argument has met with mixed results in the courts. *Compare EEOC v. Chrys-*

question of severability, following which it will address the issue of congressional ratification.

 In determining whether a part of a statute is severable from the remainder, the overriding principle to be followed is that the invalid portion of a statute must be severed from the remainder of the statute, " 'unless it is evident that the Legislature would not have enacted those provisions that are within its power, independently of that which is not.' " *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (*quoting Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932)). Additionally, the invalid portion of a statute is, "presumed severable if what remains after severance 'is fully operative as a law.' " *Chadha, supra,* 103 S.Ct. at 2775.

 The Reorganization Act of 1977 does not have a severability clause. However, although a severability clause may raise a presumption that the invalid portion of a law is severable from that which is not, *Chadha, supra,* 103 S.Ct. at 2774, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson,* 390 U.S. 570, 585 n. 27, 88 S.Ct. 1209, 1218 n. 27, 20 L.Ed.2d 138 (1968). *See also Consumer Energy Council v. FERC,* 673 F.2d 425, *aff'd mem.,* —— U.S. ——, 103 S.Ct. 3556, 77 L.Ed.2d 1402, 1403, 1413 (1983).

In determining whether a legislative veto is severable from the remainder of a statute, the Fifth Circuit recently recognized that courts could best glean legislative intent, "by an analysis of the statute in ques-

tion." *EEOC v. Hernando Bank, supra,* 724 F.2d at 1190. Consequently, the Court turns to the Reorganization Act of 1977 to determine such intent. In § 901(a) Congress set forth the purpose of enacting the Reorganization Act:

The Congress declares that it is the policy of the United States—

(1) to promote the better execution of the laws, the more effective management of the executive branch and of its agencies and functions, and the expeditious administration of the public business;

(2) to reduce expenditures and promote economy to the fullest extent consistent with the efficient administration of the Government;

(3) to increase the efficiency of the operations of the Government to the fullest extent practicable;

(4) to group, coordinate, and consolidate agencies and functions of the Government, as nearly as may be, according to major purposes;

(5) to reduce the number of agencies by consolidating those having similar functions under a single head, and to abolish such agencies or functions thereof as may not be necessary for the efficient conduct of the Government; and

(6) to eliminate overlapping and duplication of effort.

Furthermore, Congress declared that these purposes could be carried out most effectively by delegating authority to the President. 5 U.S.C. § 901(b).[5] Strikingly absent from the statements of Congressional purpose is any mention of the legislative veto. Based on an analysis of the face of the statute, this Court cannot conclude that it is evident that Congress would not have enacted the valid portions of the

---

ler Corp., 595 F.Supp. 344, 33 F.E.P. 1838 (E.D. Mich.1984) (*Chadha* not to be applied retroactively); *with EEOC v. Allstate Insurance Co.,* 570 F.Supp. 1224, 1232–33 (S.D.Miss.1983), *appeal dismissed,* —— U.S. ——, 104 S.Ct. 3499, 82 L.Ed.2d 810 (1984). Because this Court concludes that the legislative veto herein is severable and that Congress has ratified the transfer of authority to the EEOC, it would be unnecessary for the Court to address the issue of *Chadha's* retroactivity. *See Ashwander v. TVA, supra.*

**5.** Section 901(b) provides:

Congress declares that the public interest demands the carrying out of the purposes of subsection (a) of this section and that the purposes may be accomplished in great measure by proceeding under this chapter, and can be accomplished more speedily thereby than by the enactment of specific legislation.

Reorganization Act of 1977 without the legislative veto.

An analysis of the legislative history does not vary this conclusion. In its report, the House Committee on Government Operations recognized the need for the efficient reorganization of the Executive Branch. H.R.Rep. 95–105, *reprinted in* 1977 U.S.Code Cong. & Admin.News 41, 43–44. In arguing that the legislative veto is not severable, D.P. & L. relies on the comments of Congressman Drinan who noted that the Reorganization Act, "intentionally does not contain a severability clause." H.R.Rep. 95–105, *supra* at 69. Thus, he concluded that, "[T]he one House veto provision is deemed to be an integral and necessary part of the legislative scheme for reorganization." *Id.*

Notwithstanding Congressman Drinan's comments, this Court echoes the conclusion of the Fifth Circuit in *EEOC v. Hernando Bank, supra:*

> With the exception of Congressman Drinan's comments, nothing in the wording of the Act or in its legislative history indicates that Congress would not have enacted the Reorganization Act without the legislative veto provision or that Congress even considered the issue of severability.

724 F.2d at 1191.

Accordingly, this Court concludes that the legislative veto within the Reorganization Act of 1977 is severable from the remainder of that act. In so doing, this Court joins a growing list of courts which have reached the same conclusion.[6] *EEOC v. Hernando Bank, supra; Muller Optical Co. v. EEOC,* 574 F.Supp. 946, 951–53 (W.D.Tenn.1983), order affirmed, 743 F.2d 380 (6th Cir.1983); *EEOC v. U.S. Steel,* 34 F.E.P. 1091 (W.D.Pa.1984); *EEOC v. Radio Montgomery Inc.,* 588 F.Supp. 567, 34 F.E.P. 378 (W.D.Va.1984); *EEOC v. New York,* 590 F.Supp. 37, 34 F.E.P. 379 (N.D.

N.Y.1984; *EEOC v. Pan American World Airways,* 34 F.E.P. 321 (N.D.Ca.1984); *EEOC v. C.B.S., Inc.,* 34 F.E.P. 257 (S.D.N.Y.1984); *EEOC v. El Paso National Gas Co.,* 33 F.E.P. 1837 (W.D.Tex.1984); *EEOC v. Jackson County,* 33 F.E.P. 963 (W.D.Mo. 1983); *EEOC v. City of Memphis,* 581 F.Supp. 179, 33 F.E.P. 1089 (W.D.Tenn. 1983). *See also EEOC v. Old Dominion Freight Line, Inc.,* 587 F.Supp. 1128, 34 F.E.P. 377 (M.D.N.C.1984) (EEOC has authority to enforce ADEA notwithstanding *Chadha*); *EEOC v. Cudahy Foods Co.,* 588 F.Supp. 13, 33 F.E.P. 1836 (W.D.Wash. 1983) (same). This Court notes that other courts have reached the opposite conclusion. *EEOC v. Allstate Insurance Co., supra; EEOC v. Westinghouse Electric Corp.,* 33 F.E.P. 1232 (W.D.Pa.1984); *EEOC v. Chrysler Corp., supra.*

As stated above, the EEOC also argues that even if the transfer of power to enforce the Equal Pay Act was ineffective because the legislative veto is not severable, it nonetheless has valid authority to enforce the Act, because Congress, by certain actions subsequent to the transfer of authority, ratified the executive reorganization.

■ It has long been recognized that, by its actions, Congress can ratify an unauthorized but otherwise valid transfer of functions from one department of the Executive Branch to another. *See e.g., Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937); *Swayne v. Hoyt, Ltd. v. United States,* 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659 (1937). As the Supreme Court said in *Swayne & Hoyt, Ltd. v. United States, supra,* "It is well stated that Congress may, by enactment not otherwise inappropriate, 'ratify . . . acts which it might have authorized,' see *Mattingly v. District of Columbia,* 97 U.S. 687, 690, 24 L.Ed. 1098 [1878], and give the

---

**6.** Many courts have analyzed this issue in the context of the transfer of authority to enforce the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* to the EEOC. As with the Equal Pay Act, President Carter transferred enforcement authority over the ADEA to the EEOC with Reorganization Plan No. 1 of 1978. Hence, cases arising in the context of the ADEA are analytically indistinct from those in which the EEOC's authority to enforce the Equal Pay Act is challenged.

force of law to official action unauthorized when taken." 300 U.S. at 301–02, 57 S.Ct. at 479–80 (citations omitted).

■ First, the EEOC argues that § 905 of the Civil Service Reform Act of 1978, P.L. 95–454, 92 Stat. 1111, 1224, 5 U.S.C. 1101 note, is evidence of such ratification. That section provides that, "Any provision in … Reorganization Plan … 1 of 1978 inconsistent with this Act is hereby suspended." The EEOC argues that this was implicit ratification of those potions of Reorganization Plan No. 1 of 1978 which were not inconsistent with the Act. The EEOC also points out that Congress has appropriated funds to it in acts that specifically refer to its enforcement power over the ADEA and the Equal Pay Act. P.L. 98–166, 97 Stat. 1071, 1088; P.L. 97–377, 96 Stat. 1830, 1874. *See also*, P.L. 97–92, 95 Stat. 1183, 1192 (mentioning ADEA).

In arguing that Congress has not ratified the transfer of authority to the EEOC, D.P. & L. relies on *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). In *Greene*, the Court said ratification should not be implied from appropriation measures particularly when the subject arguable ratified is in an "area of questionable constitutionality." *Id.* at 506, 79 S.Ct. at 1418.

*Greene* is inapposite. The transfer to the EEOC of enforcement authority over the Equal Pay Act affects no substantive rights; nor does it impinge upon an area of questionable constitutionality. In discussing this transfer of authority, the Fifth Circuit in *EEOC v. Hernando Bank, supra,* said:

The challenged executive action did nothing more than transfer the federal government's responsibility for enforcing the Equal Pay Act from one executive agency to another, *i.e.* from the Secretary of Labor to the EEOC. The reorganization plan effected no substantive change in the applicable substantive legislation; indeed, 5 U.S.C. § 905 forbids any such changes.

724 F.2d at 1192 n. 2.

This Court has analyzed the relevant statutory materials and concludes that Con-

gress has ratified the transfer of authority to the EEOC. Most of the courts which have considered this question have reached the same conclusion. *Muller Optical Co. v. EEOC, supra; EEOC v. Radio Montgomery, Inc., supra; EEOC v. State of New York, supra; EEOC v. Pan American World Airways, supra; EEOC v. CBS, Inc., supra; EEOC v. El Paso Natural Gas Co., supra; EEOC v. Jackson County, supra; EEOC v. City of Memphis, supra.* However, some courts have reached the opposite conclusion. *EEOC v. Allstate Insurance Co., supra; EEOC v. Martin Industries*, 581 F.Supp. 1029 (N.D. Ala.1984); *EEOC v. Westinghouse Electronic Corp., supra; EEOC v. Chrysler Corp., supra.*

In conclusion, the Court has determined that the legislative veto in the Reorganization Act of 1977 is severable from the remainder of that statute and that Congress has ratified the transfer to the EEOC of enforcement authority over the Equal Pay Act. Accordingly, this Court holds that the EEOC has authority to enforce the Equal Pay Act. Therefore, D.P. & L.'s motion for summary judgment is overruled.